You're ready. Counsel, Your Honors, may it please the Court, my name is John Jordan. I'm representing the petitioner, Mr. Maldonado. I think it's important to recognize, Your Honors, the procedural posture we're in here, where the court, the district court, dismissed the petition as untimely, at a point when he was required under Ninth Circuit precedent to take the facts as alleged by the petitioner as true. And I think the facts alleged by Mr. Brancato, if I'm saying his name right, the inmate who was assisting him, set out that Mr. Maldonado just didn't have the mental competence to understand what was going on. In a proceeding where he received a 40-year sentence under a pretty simple transcript, which just says I'm saying yes and no to the questions, a plea of 40 years that he entered after his counsel waived preliminary hearing very early on in these proceedings. I think in this situation there were enough facts corroborating Brancato's allegations that the district court should have held an evidentiary hearing. We did ask for an evidentiary hearing below, and it was denied. With respect to the, well, the evidentiary hearing, that's a discretionary decision, isn't it? It is, Your Honor, but I believe your precedents have said that in this situation with the person who is alleging mental incompetence as an excuse or as a justification for equitable tolling, if there's sufficient facts in the record, the court should hear an evidentiary hearing to resolve those different facts from both sides. Let me ask you a different question. The judgment became final on July 6, 2007, is that right? Yes, Your Honor. And no appeal was taken? Correct. So if we focus on the 12-month period between when the appeal time ended in 60 days and 12 months, if there's no equitable tolling during that time, would this petition be timely? No, Your Honor. We would need equitable tolling for the, as I put out on my brief, from the period when his judgment was entered until he filed his habeas. And I understand he was able to file, I think with the help of other inmates, some pleadings in the Superior Court. But when you look at those pleadings, again, that kind of illustrates his mental incapacity. Why a defendant who's getting a 40-year sentence is serving papers to modify his restitution? He is never going to be paying any money in restitution. Well, Mr. Braccato first met the petitioner in, I believe, March of 2012, is that right? I think that's right, Your Honor, yes. So that's about four years after the end of the first 12-month period? Absolutely, Your Honor. Why would then, putting aside that he was assisting and that could go to the value or the weight of his testimony, why is his testimony or declaration sufficient to show clear error here if he didn't, if he's observing the petitioner four years later? I think on its own there might be an issue there. But, again, going to the corroboration in the record, the motorcycle accident, the fact that he told the police that the devil made him do it, the fact that the probation department indicated he was on Remeron and his statement at the plea colloquy that he was on a painkiller, I think those facts corroborate not only Mr. Braccato's opinion but also raise a significant issue as to whether that condition was chronic. And the condition Mr. Braccato is talking about isn't something like an infectious disease. He's talking about a mental impairment for which I think an inference is he's been suffering from this. The issue at the preliminary — excuse me, the issue at the evidentiary hearing, if I were granted an expert, would be whether that expert, understanding that retrospective evaluations are disfavored. The papers — excuse me, finish your — But I think in this situation, this is a situation where that psychiatrist or psychologist would be giving critical evidence as to whether he has a condition now and whether that's the kind of condition that is chronic and long-lasting. Your Honor. Sorry, I didn't mean to interrupt. No. I never liked it when I was on that side of the podium. I actually enjoy being interrupted because I'm tired of speaking. He did, with the assistance of what we call these days a jailhouse lawyer, file some pleadings in state court, correct? He did, Your Honor, yes. Were they timely filed? Well, first, I tried to file a notice of appeal. Can you start with a yes or no? No, I will interrupt you. Can you start with a yes or no? Well, some were timely and some were untimely, Your Honor. The first one I think he filed was for an untimely notice of appeal, but it was too late. His notice of appeal time had long elapsed. He then filed a request for transcripts. I suppose that's timely, but they denied it because they said he didn't have an appeal. The request to change restitution, I believe that would be timely since financial circumstances change. But, again, why somebody would file such a request when you're serving a 40-year sentence just really doesn't make much sense to me. So some, I think, were timely, but some were, especially the initial one, was untimely. Let me come back to the evidentiary hearing question because I think if there's a soft spot in the case for the state, I mean, that's it. I'm not quite sure I know the law here. If this were summary judgment, I understand we're supposed to take all the evidence on one side and just believe that if the motion is made against that party. Is the same true when we're talking about evidentiary hearings for such things as equitable tolling? That is to say, is the judge allowed to do any reconciliation of conflicting evidence without having an evidentiary hearing? Well, Your Honor, I didn't cite it in my brief, but Friday looking over it, looking at the, I think it was an en banc decision, Few v. Beiter, 842F3-650. This court did say that in a motion for the habeas case to dismiss, as untimely, the court must accept the facts as alleged by the petitioner. And then it cites Fuser v. Carey and Miles going back to Miles v. Prunty. So I believe the district court is required to accept those facts as true because of the posture of it being a motion to dismiss. Yeah, so we treat it as if it were a motion to dismiss or a summary judgment. Does it say the judge is not allowed to do any sort of, well, I believe this side more than the other? That's my position, and I think this is a motion to dismiss. It's a motion to dismiss as untimely. It was granted. My petition was dismissed. Wasn't there, when the first request, first petition was filed, there was an issue about timeliness in a motion. Didn't the district court then defer until evidence could be gathered and submitted? Yes. The district court did give us time to meet and confer, and we were able to get with Ms. Thayer, who is very cooperative from the California Attorney General's office. She was very helpful in getting those prison records that were submitted to the court, which both sides take different views of. We both see evidence to support our positions in those records. That was received. But if on the motion the facts, as alleged, have to be accepted as true, why was it necessary to submit any evidence? Well, Your Honor, I think both sides got the opportunity to develop further evidence and submit more facts to the court. So I'm alleging in the prison medical records there is facts that support the position. I think the district court has to take the words stated by Mr. Brancato as true. That doesn't mean he has to say, I therefore find he's entitled to relief. He still has to make a legal judgment on those facts as found. My position is those facts, as set out by Mr. Brancato, do establish the need for an evidentiary hearing. I think they're that strong that nothing counterbalances that, and the district court should have granted the hearing, if that answers your question. Earlier you referred to the use of a drug, a pharmaceutical drug. Remeron, Your Honor. And at the plea colloquy, wasn't there an interchange concerning the use of a drug? Yes, Your Honor, but I don't think it was Remeron. I think it was a painkiller for the legs and his pain. Now, it's absolutely true. It's not at the plea colloquy that he's taking Remeron. I'm getting that fact from the probation report, which was prepared shortly thereafter. So my position is, again, an evidentiary hearing would be needed to see whether he was taking that pain, that medication along with the painkiller at the plea, and see if that would have an impact on his ability to comprehend the legal proceedings. Okay. Okay. Why don't we hear from the other side, and you've saved some time. Thank you, Your Honor. Thank you, Your Honor. Good morning, and may it please the Court. Mike Mongin on behalf of the State Respondent. Let me begin by going directly to the question of how the district court handled this case and the evidentiary hearing. I think with respect that this is somewhat different, the procedure that this court has instructed for this particular context than a typical motion to dismiss. In cases like the recent decision in Orthel, what the court has said is that the district court must look at the petition and make an assessment as to whether there are non-frivolous allegations of severe mental impairment that would be sufficient to satisfy bills. And if there are, then the court should expand the factual record, whether that's by discovery or by the type of submission of exhibits that happened here, and then consider those allegations in the light of the expanded factual record. And that's exactly what the district court did here. The district court denied our initial motion to dismiss because it took the allegations of Mr. Boccato seriously, and it instructed the parties to meet and confer to expand the record and seek discovery, if appropriate. After that, the parties submitted detailed documents from the state court proceedings and the central file from the state prison records, and the district court conducted a very searching inquiry looking at Mr. Boccato's statements in light of that record. And I think its determination that Petitioner had not carried his burden of establishing severe mental impairment that made it impossible for him to satisfy the federal statute of limitations was not clear error in light of the record that was before the district court and that is presently before this court, which includes, among other things, the fact that Petitioner was able to file a number of documents and internal administrative proceedings and state court proceedings. Some of those were viewed as untimely or procedurally deficient, to be sure, but others were not, and they indicate a general understanding of legal proceedings and an ability, perhaps with the assistance of others in some places, to file the requisite documents to seek relief. The balance of the materials, including documents that my friend has pointed to, I don't think corroborates the type of mental impairment that Petitioner is contending that he suffers from. There was a detailed plea colloquy in the state court, and as Your Honor pointed out, the trial court judge did follow up where appropriate, including asking specific questions about medication. Petitioner volunteered only the pain medication for his knee, but the state court was very careful to ask whether that was affecting his thinking, his ability to understand and comprehend the proceedings. I think that another point I would make is, on this record, it is the case, it is apparent in the central file that there is some mental health services that Petitioner has been receiving, but that he's been receiving the lowest level of treatment that is available in state prison, which is akin to the type of treatment that someone in the outside world would receive if they're getting outpatient psychiatric services. I don't think that that documentation carries the burden, the high burden that a petitioner is facing in this context. If the court has no further questions. Does the record show whether there was any assistance provided to the petitioner in connection with the several ADA requests, some of which were granted, some of which were denied? Your Honor, I looked through for that, and I wasn't able to determine one way or the other. I think it's probably a fair inference that there was some assistance, because the record does speak to his rather limited English proficiency, and the documentation for those requests are written out in quite clear and cogent English. But I'm not sure that that affects the analysis one way or the other, because whether these are documents that he's been able to prepare by himself or with the assistance of a jailhouse attorney or someone else in the facility, the point is that he has demonstrated his ability, perhaps with assistance, to file this type of document. And I think that these courts' cases in decisions such as Yea indicate that even when someone has very limited abilities or English proficiency, if they're able to, with the assistance of others, file this type of document, then their failure to do so in federal court is not a basis for equitable tolling. With respect to Mr. Bracato and the testimony or declaration that he submitted, as I noted earlier, that was several years after the first 12-month period expired, in response to which Mr. Jordan said that's what would have justified an evidentiary hearing at which a person could have, an expert could have testified as to the likelihood that that condition existed back earlier. What about that? What's your response to that? Well, two points, Your Honor. I agree this was after the fact, and certainly retrospective analysis has a more limited probative value than documents about the specific period of time. I think that the problem here is that there is nothing beyond the rather conclusory statements of Mr. Bracato to establish with specificity that there was any possibility of an impairment so severe during this period that it would satisfy the bill's framework. And so I think it was appropriate for the district court to take those statements and then conduct a more searching factual inquiry based on the record. But I don't think that this Court's decisions require, per se, an evidentiary hearing just on the basis of that type of allegation. And I'd point the Court to its Orfell decision, which is very similarly postured where the district court did just essentially what happened here. Mr. Bracato, didn't Mr. Bracato refer to the petitioner as someone who was the equivalent of a 10-year-old in terms of mental capacity? That is right, Your Honor. But that is a statement that is in the record from Mr. Bracato. But again, and the district court pointed this out, the balance of the central file, which was the document actually submitted before the district court, does not really substantiate that. I mean, there are a number of prison proceedings where prison officials come to the conclusion that the petitioner is able to comprehend the proceedings. And then, of course, at the state trial court proceeding, there was a plea that the trial court found to be knowing and voluntary. All right. Thank you. Okay. Thank you very much. Thank you, Your Honors. And you've saved some time. Thank you, Your Honor. First, going to Othell, this is written by one of the members of the panel, I believe. A key distinction here is in Othell, I believe, the petitioner did not ask for an evidentiary hearing before the district court. The record had been amply developed there, including extensive, as I remember, psychiatric records. Here we did ask for an evidentiary hearing because I think there are some issues that could be resolved to answer the question of whether he had the preexisting condition and whether he really did or did not understand what was going on at the plea. It always seems a bit strange to me when you ask somebody pleading if the medication is causing him the inability to understand what's going on because if it does, then he can't answer that question. And finally, Judge Cronstadt's last question about whether he had the capacity of a 10-year-old, looking at the facts of this case and the unfortunate crimes that were committed here or are accused to be committed here involved very young victims. Again, the nature of the crime, I think, in some respects corroborates the possibility of this condition of the man having an inability to see things as anyone older than a 10-year-old. What about the statements that's reported in the police report where a witness reported that the witness had been asked not to report what the witness had observed? Well, I think even a 10-year-old would be afraid of what had happened, and I think he did understand he had done something wrong. The question is did he understand it with an adult mental capacity as opposed to a child. And between when he met Mr. Bregado in March of 2012 and the filing of the petition here, the estate petition, was that in 2014? I thought it was 2013. About 18 months? Yeah, about 18 months, yeah. Why is that due diligence? Well, again, as I understand the California state procedural rules, they don't have a cut-and-dried one-year deadline or deadline as we do. They have to use reasonable diligence. And I just, again, without an evidentiary hearing, we don't know how many other people Mr. Bregado was helping, whether he had the time ability to get to the legal library. But I think 18 months is not an unreasonable amount of time to prepare a habeas petition by a non-lawyer in a jail. But during that 18 months, the 12-month statute was running under this statute? It was, Your Honor, but first he did have to go to state court to exhaust. I understand. Okay. Okay, thank you both. Thank you, Your Honor. Thank you very much. I thank both sides for a helpful argument. Maldonado v. Paramo submits for decision. The next case this morning, Chu v. CCSF.
judges: Hawkins, W. Fletcher, Kronstadt